UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

BUBBLE GENIUS LLC,

15-CV-05369 (KAM)

                    Plaintiff,

     -against-


MARIANN SMITH, an individual d/b/a
"JUST BUBBLY,"

                    Defendant.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

          Plaintiff Bubble Genius LLC ("plaintiff" or "Bubble Genius") brings this action alleging trade dress infringement and unfair competition pursuant to the Lanham Trademark Act ("Lanham Act") § 43, 15 U.S.C § 1125(a) and § 32, 15 U.S.C § 1114(1), New York General Business Law § 360-I and New York State common law, against defendant Mariann Smith d/b/a Just Bubbly ("defendant" or "Ms. Smith").  Presently before the court is defendant's Motion to Dismiss the Amended Complaint (the "Motion") for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 19.)  For the reasons stated herein, the Motion is granted.

## Background

          For purposes of this Motion, the court accepts as true

the following allegations in plaintiff's Amended Complaint. Bubble Genius and Ms. Smith are both in the business of producing novelty soaps. Plaintiff claims it possess an unregistered trade dress in its "In Your Element Periodic Table Soap" (hereinafter "In Your Element Soap"), which Bubble Genius created with the intent "to invoke association with the chemical periodic table of [] elements." (Amended Complaint ("Am. Compl."), ECF No. 17 at ¶ 14.) Plaintiff's asserted trade dress, which in large part is identical to periodic table of elements available in the public domain, includes the chemical symbol, atomic number, name of the element, atomic mass, energy level, and the layout of the element's scientific information. It also includes the size, shape, and color of the soaps, the use of black ink, the embedding of the ink in the soap, clear packaging and Bubble Genius' trademarks. (*Id.* at ¶ 15.) Plaintiff selected the colors that reflected the radioactive elements, uranium, plutonium and radium, based on the available glow-in-the-dark colors and it chose the "obvious" colors for its silver and gold soaps. (*Id.* at ¶ 16.) Beginning in October 2010, plaintiff has exclusively and continuously manufactured, packaged, advertised, marketed and distributed the "In Your Element Soap." (*Id.* at ¶¶ 18-20.)

In or around June or July 2014, defendant introduced its own line of soaps that utilized periodic tables in the public domain. (*Id.* at ¶ 25.) Plaintiff was informed by one of its

customers in June 2015 that it had "found a new vendor for the Element Soaps." (Am. Compl., ECF No. 17 at ¶ 29.) Plaintiff alleges that its customer had the "mistaken belief that defendant's product" was plaintiff's "In Your Element Soap." (*Id.* at ¶ 29.)

In January 2015, plaintiff commenced an action against defendant in United States District Court for the Central District of California. That action was dismissed for lack of personal jurisdiction. (*Id.* at ¶ 6.) Plaintiff filed the Complaint in this action on September 17, 2015. (ECF No. 1.) Plaintiff filed the Amended Complaint on March 7, 2016, alleging four claims, (1) trade dress infringement, (2) federal unfair competition and false designation of origin, (3) New York statutory unfair competition, and (4) New York common law unfair competition. (Am. Compl., ECF No. 17 at §§ 31-52.) The parties filed their fully briefed motion to dismiss papers on May 18, 2016. (ECF Nos. 18-23.) The court heard oral argument on the Motion on November 1, 2016. (Minute Entry dated November 1, 2016.)

## Discussion

### I. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citations omitted). While

detailed factual allegations are not required, the pleading standard set forth in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [ ] Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citations omitted).

For the purposes of a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A district court may also consider "matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs

had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted).

## II. Analysis

Defendant moves for dismissal of the Amended Complaint arguing that plaintiff's alleged trade dress is functional, and therefore not protectable under Section 43(a) of the Lanham Act. Further, plaintiff moves to dismiss plaintiff's New York statutory unfair competition claim on preemption grounds, and its common law unfair competition claim for failure to plead bad faith. For the reasons stated herein, the court grants defendants' motion to dismiss the Amended Complaint.

### A. Lanham Act Claims

Plaintiff alleges that defendant's use of the periodic table in its soap design violates 15 U.S.C. §§ 1114(1) and 1125(a). Section 1114(1) requires that a plaintiff register its trade dress to obtain relief against an alleged violator. *Id.* ("Any person who shall, without the consent of the registrant. . ."). The Amended Complaint does not allege that plaintiff's trade dress is registered. Therefore, plaintiff has not stated a plausible claim under 15 U.S.C. § 1114.[1] Accordingly, the court analyzes Count 1 (Trade Dress Infringement) and Count 2 (Federal Unfair Competition

---

[1] Plaintiff did not address defendant's argument about the need for a registered trademark in order to bring a claim under 15 U.S.C. § 1114(1) in its opposition brief. Therefore, the court considers this claim abandoned.

and False Designation of Origin) under the unregistered trade dress law pursuant to 15 U.S.C. § 1125(a), which provides in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [ ] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person [ ] shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Protection under 15 U.S.C. § 1125(a)(1)(A) extends to a product's trade dress which "encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001).

### i. Federal Trade Dress Infringement

"To plead a claim of trade dress infringement involving the appearance of a product, [a plaintiff] must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's [product] and the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391

(2d Cir. 2003) (citation omitted). "A plaintiff must also offer a precise expression of the character and scope of the claimed trade dress," *id.* (internal quotation marks and citation omitted), and articulate the "elements of their product design with specificity to be afforded trade dress protection." *Shevy Custom Wigs, Inc. v. Aggie Wigs.*, No. 06 Civ. 1657(JG), 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006).

The Second Circuit has cautioned that in analyzing trade dress claims, "courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 375 (2d Cir. 1997). Trade dress "analysis requires courts to balance the policy of protecting consumers from confusion against that in favor of free competition." *Id.* at 377, 380; *see ID7D Co. v. Sears Holding Corp.*, No. 3:11 cvl 054(VLB), 2012 WL 1247329, at *6 (D. Conn. Apr. 13, 2012) (same). "While trademarking a generic term would create a monopoly in a necessary word or phrase, granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves. For this reason, courts have exercised particular 'caution' when extending protection to product designs." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 332 (2d. Cir. 1995)); *see*

*also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) ("[T]rade dress protection for product design . . . entails a greater risk of impinging on ideas as compared with protection of packaging or labeling.")

Here, plaintiff seeks trade dress protection for a product design, to wit, "each of the products in BGL's line of ["In Your Element Soap" which] employs . . . data from a chemical periodic table of the elements, [and are] intended to invoke association with the chemical periodic table of the elements." (Am. Compl., ECF No. 17 at ¶ 14). As discussed below, plaintiff has not alleged sufficiently plausible facts that the elements comprising its trade dress are non-functional. Nor has plaintiff sufficiently alleged that its "In Your Element Soap" has attained a secondary meaning. Accordingly, plaintiff has failed to state a plausible trade dress infringement claim pursuant to 15 U.S.C. § 1125(a).

## 1. Functionality

Plaintiffs bear the burden of alleging plausible facts that the asserted trade dress is non-functional, 15 U.S.C. § 1125(a)(3), and there is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 30, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). "[T]rade dress is functional, and thus not protectable,

when it is 'essential to the use or purpose of the article,'" *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed. Appx. 615, 620 (2d Cir. 2008) (citation omitted), or "if it affects the cost or quality of the article." *Yurman Design, Inc.*, 262 F.3d at 116 (citation and quotation marks omitted).

Moreover, under the aesthetic functionality doctrine, a trade dress claim based on "[a] product design is functional when certain features of the design are essential to effective competition in a particular market." *Cartier, Inc.*, 294 Fed. Appx. at 620 (internal quotation marks and citation omitted); *ID7D Co.*, 2012 WL 1247329, at *6 ("[I]n cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage. Thus, the non-functionality requirement protects competition even at the cost of potential consumer confusion."). "[W]here an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs, the aesthetic functionality doctrine denies such protection." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 217 (2d Cir. 2012) (quoting *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 409–10 (2d Cir. 1997) and *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990). "But on the other hand, distinctive and arbitrary

arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional, and are hence eligible for trademark protection." *Christian Louboutin*, 696 F.3d at 220 (citation and quotation marks omitted).

Here, defendant argues that plaintiff's claimed trade dress is functional and unprotectable because (1) when viewed as a whole the trade dress is merely a copy of the periodic tables available in the public domain, and (2) the following key elements of plaintiff's claimed trade dress are also functional: its use of scientific information, its choice of colors, and the physical characteristics of the soap. (*See* Defendant's Memorandum of Law in Support of Her Motion to Dismiss Plaintiff's Amended Complaint ("Def. Br."), ECF No. 19-1 at 6-11.) Plaintiff counters that the aesthetic features are not functional because the purpose of the soaps are to cleanse. (*See* Memorandum on Behalf of Bubble Genius LLC in Opposition to Defendant's Motion to Dismiss the Complaint ("Pl. Opp."), ECF No. 20 at 15-16). Plaintiff also argues that the appropriate market is the novelty soap market and that trade dress protection for its "In Your Element Soaps" would not impede defendant's ability to compete in the novelty soap market. (Pl. Opp., ECF No. 20 at 8-9).

The first step of the functionality inquiry is determining whether the design feature is "essential to the use or

purpose" or "affects the cost or quality" of the product at issue. *Christian Louboutin*, 696 F.3d at 220. From a utilitarian perspective, the trade dress is not essential to the use of the product as a soap, nor does the trade dress affect the quality of the soap because the trade dress is comprised of purely ornamental features. Consequently, the court finds that the trade dress as alleged is non-functional in the utilitarian context of all soap, including novelty soaps inspired by periodic tables. The court, thus, continues its aesthetic functionality inquiry, to determine whether the design features of the "In Your Element Soap" trade dress are essential to, or would significantly hinder competition in the market for periodic table inspired novelty soaps. *Id.*

The court finds that plaintiff's trade dress is aesthetically functional because it is purely ornamental, and the trade dress' design features are necessary for competition in the market for periodic table inspired novelty soaps. *Wallace*, 916 F.2d at 81 (holding that "purely ornamental features" are functional when their use is necessary for competition in the market). Plaintiff's claimed trade dress is comprised of features that are ornamental in nature, and that extend to the "overall appearance" of its product. Where the asserted trade dress extends to the "overall appearance" of the combination of features comprising a product, the court must evaluate the functionality of those features taken together. *See Jeffrey Milstein*, 58 F.3d at

31-32.  "[T]he fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea."  *Id.* at 32.

Each element of plaintiff's trade dress is generic, and features well-known decorative details from periodic tables that exist in the public domain.  Plaintiff's soaps are rectangular and display the following scientific information: the chemical symbol, atomic number, atomic mass, energy levels, and the name of the chemical element.  (Am. Compl., ECF No. 17 at ¶¶ 14-15.)  The placement of scientific information on plaintiff's "In Your Element Soap" mirrors the actual placement of the same information on periodic tables in the public domain.  (Exhibit 1 ("Ex.") to Am. Compl., ECF No. 17-1.)  Further, plaintiff's color choices for the soaps are closely associated with the periodic table and/or the chemical element that it is supposed to reflect.  For instance, the colors of the soaps reflecting the chemical elements gold, silver, krypton, and sodium are respectively, gold, silver, green and a natural-salt color.  (Am. Compl., ECF No. 17 at ¶¶ 14-15.)  Little, if any creativity is reflected in plaintiff's "In Your Element Soap."  Instead, plaintiff copied information readily available in the public domain when designing its soaps.  When viewed together, each bar of soap in plaintiff's "In Your Element Soap" product line depicts a chemical element using the same

format, information, and sometimes the same color commonly used in periodic tables in the public domain. (*Id.*)

The circumstances in this action are analogous to the trade dress at issue in *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990). In *Wallace*, plaintiff sought trademark protection for its baroque-style silverware line, "not for a precise expression of a decorative style, but for basic elements of a style that is part of the public domain." *Id.* The *Wallace* plaintiff sought protection for a baroque-style silverware pattern that the court described as "ornate, massive and flowery with indented, flowery roots and scrolls and curls along the side of the shaft, and flower arrangements along the front of the shaft." *Id.* at 77. The defendant's baroque-style pattern contained "typical baroque elements including an indented root, scrolls, curls, and flowers." *Id.* The defendant's arrangement of the elements of its silverware pattern was similar to *Wallace's*, but the dimensions of the patterns were noticeably different, and the defendant's pattern extended further down the handle of the silverware than *Wallace's* pattern. *Id.* The Second Circuit upheld the lower court's finding that many of the similarities between the plaintiff's and defendant's patterns were common to all "baroque-style designs used in the silverware market" and that effective competition in the baroque-style silverware market required the "use of

essentially the same scrolls and flowers" as were found on plaintiff's product. *Id.* at 80. The *Wallace* court held that the aesthetic functionality doctrine barred protection of "basic elements of a style that is part of the public domain" and affirmed the lower court's decision. *Wallace* 916 F.2d at 81-82.

Here, plaintiff cannot claim exclusive use of the periodic table of elements from the public domain to make its novelty soaps, and consequently fails to state a claim for trade dress infringement. Defendant's product, like the product of the defendant in *Wallace*, shares similarities to plaintiff's product, as would be expected because both products utilize similar scientific information to appeal to consumers in the market for periodic table inspired novelty soaps. Both of the parties' alleged periodic table soaps incorporate the same basic features of the periodic table of elements, such as the chemical symbol, atomic number, name of the element, atomic mass, energy level, and format the element's scientific information in a similar manner as periodic tables in the public domain. Furthermore, the similarity of colors utilized in both product lines is indicative of the chemical element the soaps are intended to represent, *i.e.* the soap representing gold as an element is gold in color, and the soap representing silver as an element is silver in color. (Am. Compl., ECF No. 17 at ¶ 16(b) ("The choice of colors silver and gold for its Ag(silver) soap and Au(gold) soap are obvious.").)

Consequently, the court finds that the alleged similarities between the two product lines is insufficient to state a trade dress infringement claim because effective competition in the market for periodic table inspired novelty soaps requires free use, by all competitors, of the elements of the claimed trade dress.

Further, plaintiff's own allegations concede that its trade dress was "intended to invoke association with the chemical periodic table of the elements" and was meant to be an "amusing" product that appealed to customers. (Am. Compl., ECF No. 17 at ¶¶ 3, 14.) The plaintiff's choice of chemical elements to offer as a soap is predictable and not protectable as trade dress. Both parties selected chemical elements with attributes familiar to the general public: hydrogen, oxygen, neon, krypton, silver, gold, uranimum, plutonium and radium. (Am. Compl., ECF No. 17 at ¶ 15, 25.) Furthermore, plaintiff alleges that the colors it chose for the radioactive elements was based on the "availability of glow-in-the-dark colors" from the manufacturer. (*Id.* at ¶ 16(a).) Thus, the choice of glow-in-the-dark colors was not a creative one that warrants trade dress protection. But, rather, a choice dictated by availability. The design features of the periodic table of elements and colors associated with the chemical elements, which plaintiff claims as a protected trade dress would appeal to a consumer in the market for periodic table inspired novelty soaps.

*See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213, 120 S.Ct. 1339 (2000) ("[A]lmost invariably, even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing."). Consequently, protecting plaintiff's claimed trade dress would hinder competition for periodic table inspired novelty soaps; competitors in this market would be placed at a "significant non-reputation-related disadvantage" if plaintiff had exclusive rights to produce and sell soaps that mimic publicly available periodic tables. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32, 121 S.Ct. 1255, 1259 (2001); *see Christian Louboutin*, 696 F.3d at 222 (quoting *Forschner Grp.*, 124 F.3d at 409–10 and *Wallace*, 916 F.2d at 81) ("[W]here an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs, the aesthetic functionality doctrine denies such protection.").

In sum, plaintiff seeks exclusive use, in the production of its "In Your Element Soaps," of the concept of a novelty soap inspired by the periodic table of elements, and thus, plaintiff has not stated a plausible claim for trade dress infringement under 15 U.S.C. § 1125(a). *See Christian Louboutin,* 696 F.3d at 219 (quoting *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 145 n. 5) ("[I]t is a 'fundamental principle of trademark law

that a trademark does not grant a monopoly of production.'"). Courts are cautioned against stifling competition by protecting an unregistered trade dress that is essentially an idea or a concept. *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (holding when the aesthetic design of a product is itself the mark for which protection is sought, the mark may be deemed functional if giving the mark-holder the right to use it exclusively "would put competitors at a significant non-reputation-related disadvantage"); *Jeffrey Milstein*, 58 F.3d at 29, 32 (holding that trade dress law, much like the law of copyright law, does not protect ideas, concepts, or a generalized type of appearance, and denying trade dress protection to "the idea of using die-cut photographs on greeting cards"). Accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the court finds that plaintiff has not stated a plausible claim trade dress infringement claim under 15 U.S.C. § 1125(a) because the alleged trade dress is aesthetically functional. *See Wallace*, 916 F.2d at at 81 (holding that "purely ornamental features" are functional when their use is necessary for competition in the market).

## 2. Secondary Meaning

"[A] court need not engage in the distinctiveness/secondary meaning analysis if the party claiming trade dress infringement cannot prove non-functionality of the

17

dress, for 'trade dress protection may not be claimed for product features that are functional.'" *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 637 (S.D.N.Y. 2001) (quoting *TrafFix*, 532 U.S. at 23, 121 S.Ct. 1255, 1259 (2001)); *see also Christian Louboutin,* 696 F.3d at 217 (Functionality is a "traditional defense to the enforcement of a [protectable mark]."). For the sake of completeness, however, the court considered whether plaintiff adequately pled secondary meaning and concludes that the plaintiff has not pled sufficient and plausible facts to state a claim that its alleged trade dress has acquired a secondary meaning.

Trade dress acquires "secondary meaning" when "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs*., Inc., 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). "Secondary meaning in a trade dress exists when a consumer immediately associates the dress of the product with its source." *Sports Traveler, Inc. v. Advance Magazine Publishers*, Inc., 25 F. Supp. 2d 154, 164 (S.D.N.Y. 1998). "Although each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry." *Jeffrey Milstein*, 58 F.3d at 32. The Second Circuit considers several factors when evaluating

distinctiveness/secondary meaning, including: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use." *U-Neek, Inc., v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 172 (S.D.N.Y. 2001) (quoting *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987)). "None of these elements is determinative and not every one of them must be proved to make a showing of secondary meaning." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F. Supp. 2d 360, 366 (S.D.N.Y. 2000) (citation omitted). The "existence of secondary meaning . . . [is] not to be determined by application of a rigid formula." *Murphy v. Provident Mut. Life Ins. Co.*, 923 F.2d 923, 928 (2d Cir. 1990).

As set forth below, plaintiff has failed to allege facts that would support a plausible claim that its trade dress has acquired a secondary meaning. Each factor of the secondary meaning analysis is discussed in turn below.

a) *Advertising Expenditures*

Plaintiff, in a conclusory manner, alleges that it made a substantial investment in "promoting, advertising and soliciting sales" of its "In Your Element Soap." (Am. Compl., ECF No. 17 at ¶ 23.) The Amended Complaint is silent on the amount of funds spent on advertising and the specifics of how the "In Your Element

19

Soaps" were advertised. The Amended Complaint is also silent as to whether plaintiff's advertising stressed the elements of the trade dress. *See Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826-27 n. 22 (Fed. Cir. 1992) (finding that $5.5 million in advertising expenditures were irrelevant to the issue of secondary meaning since the plaintiff "did not proffer evidence establishing that the advertising effectively created secondary meaning" in the alleged trade dress); *see also American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 663 (2d Cir.1979) (mere presence of extensive advertising does not resolve issue of secondary meaning). The court finds that plaintiff's allegation about its substantial investment in "promoting, advertising and soliciting sales" is nothing more than a conclusory statement devoid of factual content that does not pass muster under *Iqbal*. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Accordingly, plaintiff's allegation regarding advertising is insufficient to support an inference that plaintiff's "In Your Element Soap" trade dress has acquired a secondary meaning.

b) *Consumer Surveys*

Consumer surveys that demonstrate consumer recognition of the alleged trade dress are highly relevant to the secondary meaning analysis. *See Jeffrey Milstein*, 58 F.3d at 34. The Amended Complaint is silent on consumer recognition of the "In Your Element Soap;" not a single alleged fact bears on this factor.

In its opposition papers, plaintiff submits customer reviews and testimonials from various websites and Facebook. (Affidavit of Paula Bonhomme ("Bonhomme Aff."), Exs. D and E, ECF Nos. 20-4, 20-5.) These submissions, however, were not included in the Amended Complaint, and therefore should not be considered when evaluating the sufficiency of the pleadings. *See Goodman v. Port Authority of N.Y. and N.J.*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012) ("Memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint."). For the sake of judicial economy, the court reviewed the testimonials and reviews. The reviews and testimonials are not actual surveys but anecdotal statements, and they primarily discuss Bubble Genius' service, the scent and the quality of the soaps; none of which are elements comprising the claimed trade dress. (Bonhomme Aff., Exs. D and E, ECF Nos. 20-4, 20-5.) Further, many of the reviews and testimonials were about other Bubble Genius products and not for the "In Your Element Soap" at issue here. Therefore, consumer recognition is not supported by alleged facts that would permit a reasonable inference that the claimed trade dress has acquired a secondary meaning. *See Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-CIV-3599, 2013 WL 866867, at *4 (S.D.N.Y. Mar. 8, 2013) (finding studies posted on the company's website that made no mention of the trade dress as unsupportive of a finding of secondary meaning); *ID7D Co. v. Sears Holding Corp.*,

No. 311-CV-1054 (VLB), 2012 WL 1247329, at *8 (D. Conn. Apr. 13, 2012) (The court found that plaintiff failed to plead facts regarding secondary meaning that would state a plausible claim because plaintiff asserted no "facts relating to consumer surveys, sales success, marketing expenditures, media coverage or the length and exclusivity of its use of the dress.").

    c) *Sales Success*

       The Amended Complaint is silent on the sales success of the "In Your Element Soap." In its opposition to the Motion, plaintiff includes some sales data about the product in question. (*See* Bonhomme Aff., ECF No. 20 at ¶ 11.) But again, the court should not consider these additional facts when determining the sufficiency of the pleadings. *See Goodman*, 850 F. Supp. 2d at 380 ("Memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint."). Plaintiff states in its opposition papers that the "In Your Element Soap" was its top selling soap, amounting to over 50% of its sales. (Bonhomme Aff., ECF No. 20 at ¶ 11.) Further, the total sales for the "In Your Element Soap" decreased by 10% in the year after defendant brought its product to the market. (*Id.* at ¶ 11 n. 3.) If the facts included in plaintiff's opposition had been alleged in the Amended Complaint, they would weigh in favor of an inference that plaintiff's alleged trade dress has acquired a secondary meaning. No single factor is determinative, however and, as

discussed herein, the other factors weigh against the inference that plaintiff's alleged trade dress has acquired a secondary meaning. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F. Supp. 2d 360, 366 (S.D.N.Y. 2000) ("None of these elements is determinative.")

d) *Unsolicited Media Coverage*

The Amended Complaint is silent on unsolicited media coverage, and, therefore, this factor weighs against an inference that plaintiff's alleged trade dress has acquired a secondary meaning. *See ID7D*, 2012 WL 1247329, at *8 ("The court found that plaintiff failed to plead facts regarding secondary meaning that would state a plausible claim because plaintiff asserted no "facts relating to consumer surveys, sales success, marketing expenditures, media coverage or the length and exclusivity of its use of the dress.").

e) *Attempts to Plagiarize the Trade Dress*

The Amended complaint alleges that only defendant has violated plaintiff's trade dress. Accordingly, this factor militates against an inference that the alleged trade dress has acquired a secondary meaning. *See Dick's Sporting Goods*, 2013 WL 866867, at *5 (finding that the attempts to plagiarize factor weighed against the finding of a secondary meaning where the only plagiarizing alleged was the conduct at issue); *Metrokane*, 160 F. Supp. 2d at 640 (S.D.N.Y. 2001) (same).

23

f) *Length and Exclusivity of Use*

Plaintiff alleges that it began using the claimed trade dress exclusively in October 2010 and defendant began infringing in June or July of 2014. Therefore, plaintiff utilized the trade dress exclusively for, at most, three years and nine months before defendant's alleged infringement. (Am. Compl., ECF No. 17 at ¶¶ 5, 18-19.) Secondary meaning has been found when continuous exclusive usage of a trade dress occurred over a five-year period. *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F. Supp. 2d 360, 366-67 (S.D.N.Y. 2000). In *Landscape Forms* the secondary meaning finding was based not only upon five years of continuous exclusive usage of the trade dress, but also on other factors such as advertising highlighting the products trade dress, substantial funds spent on advertising in trade journals, postcard mailings, etc., insubstantial unsolicited media coverage, testimony from members of the relevant customer group, and substantial gross sales exceeding five million dollars. *Id.* The allegations here are not analogous to the record in *Landscape Forms* because, at most, Bubble Genius used the trade dress exclusively for three years and nine months, and the other factors all weigh against an inference that plaintiff's trade dress had acquired a secondary meaning.

In sum, absent from the pleadings are facts concerning actual consumer surveys, unsolicited media coverage, sales

success, specific advertising expenditures, or specific acts by others, in addition to plaintiff, to plagiarize the plaintiff's trade dress. On balance, these factors weigh against an inference that plaintiff's trade dress has acquired a secondary meaning. *See, Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 445, 449 (S.D.N.Y. 2011) (holding plaintiff failed to plead secondary meaning in its trade dress despite alleging its "exclusive and widespread use" of the trade dress, that it "has acquired enormous value and recognition in the United States," and that its "trade dress is well known to the consuming public" and within the trade "as the exclusive and unique source" identifier); *Dick's Sporting Goods, Inc.*, 2012 WL 3240442, at *7 (The court held that although the complaint alleged facts describing the period plaintiffs used the alleged trade dress, the sales success of product, and media coverage, because the complaint "fail[ed] to allege facts relating to [p]laintiff's advertising expenditures, consumer surveys, marketing coverage or prior attempts to plagiarize [p]laintiffs trade dress," plaintiff failed to adequately allege that its trade dress acquired a secondary meaning.); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 344-45 (E.D.N.Y. 2014) (finding that plaintiff failed to plead secondary meaning where the complaint lacked facts "concerning actual consumer surveys, unsolicited media coverage or specific attempts to plagiarize the trade dress at issue" and the

complaint had general and cursory allegations about the sales, marketing and promotion of the trade dress, and the sums spent on advertising and product design).

Because plaintiff has not pled sufficient facts to make the non-functionality of its trade dress plausible, nor has it pled sufficient facts making it plausible that its trade dress has acquired a secondary meaning, the court need not, and does not, reach the question of whether the likelihood of the parties' products causing consumer confusion is plausible. *Christian Louboutin*, 696 F.3d at 217 ("[I]f (and only if) the plaintiff's trademark is "distinctive" within the meaning of trademark law and is therefore valid and protectable, [do we] then determine whether the defendant's use of a similar mark is likely to cause consumer confusion.") (citation and internal quotation marks omitted).

### ii. Federal Unfair Competition

In addition to trade dress infringement under the Lanham Act, plaintiff also seeks to hold defendant liable for unfair competition under federal law. (Am. Compl., ECF No. 17 at ¶¶ 39-44.) "A Lanham Act unfair competition claim examines 'whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff.'" *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 513 (S.D.N.Y. 2014) (quoting *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.

1981)).  In order to state an unfair competition claim under the Lanham Act, the moving party must "demonstrate '(1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion.'" *Estate of Ellington ex rel. Ellington v. Harbrew Imports, Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011) (citing *Phillip Morris USA Inc. v. Marlboro Express*, No. 03-CV-1161, 2006 WL 2076921, at *4 (E.D.N.Y. Aug. 26, 2005)).  As previously noted, plaintiff has not alleged that its trade dress is registered, and plaintiff has failed to adequately plead that its "In Your Element Soap" trade dress is protectable because the claimed trade dress is aesthetically functional, and plaintiff has not pled sufficient facts leading to an reasonable inference that the trade dress has acquired a secondary meaning.  Accordingly, plaintiff fails to state a plausible federal unfair competition claim based on trade dress infringement.  *See AJB Enterprises, LLC v. Backjoy Orthotics, LLC*, No. 3:16-CV-00758 (VAB), 2016 WL 7341702, at *7-*8 (D. Conn. Dec. 18, 2016) (dismissing federal unfair competition claim after finding that plaintiff failed to plead facts making it plausible that it had a protectable trademark interest "whether in the form of an unregistered trademark, valid trade dress or other source of recognized protection").

### B. New York Common Law Unfair Competition Claim

In New York, "[t]he essence of unfair competition . . .

is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (citations and internal quotation marks omitted); *see Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 643 (S.D.N.Y. 2012) ("[A] plaintiff asserting an unfair competition claim under New York common law must also show that the defendant acted in bad faith."). However, "[n]ot every act, even if taken in bad faith, constitutes unfair competition." *CA, Inc. v. Simple.com*, Inc., 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009). To recover for common law unfair competition, a "plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief," and must show that there was bad faith. *Jeffrey Milstein*, 58 F.3d at 35.

Here, the Amended Complaint does not contain any facts that would lead to the plausible inference of actual or likelihood of confusion, or that defendant acted in bad faith. Plaintiff alleges in a conclusory manner that defendant acted "willfully, wantonly, oppressively and maliciously, and with the intent to cause confusion, mistake and to deceive prospective customers." (Am. Compl., ECF No. 17 at ¶ 32.) The Amended Complaint also alleges that plaintiff had "full knowledge" of Bubble Genius' trade dress before engaging in the alleged copying. (*Id.* at ¶ 33.)

Plaintiff provided no facts supporting these statements. Similar conclusory language has been held insufficient to support an inference of bad faith. *See Carson Optical*, 11 F. Supp. 3d at 330-31 (finding allegations that defendant's actions were "undertaken in bad faith to misappropriate" insufficient to plead bad faith). Moreover, that the two products have some similarities is not indicative of misappropriation grounded in bad faith because the similarities are attributable to the concept of a soap inspired by and incorporating features from the periodic tables in the public domain. A concept directly based on information in the public domain is not protectable. *See Wallace*, 916 F.2d at 81 ("[B]asic elements of a style that is part of the public domain" are not protectable.); *Kaufman & Fisher Wish Co. v. F.A.O. Schwarz*, 51 F. App'x 335, 337 (2d Cir. 2002) (finding no bad faith where the similarities between two products was due to "the commonality of the concept of an angelic wish doll marketable to young girls"). Accordingly, plaintiff has not pled bad faith and, therefore, has not pled a plausible common law unfair competition claim. *See Jeffrey Milstein*, 58 F.3d at 34-35 (a showing of bad faith is a required element of a common law unfair competition claim); *Sly Magazine, LLC v. Weider Publications L.L.C.*, 346 F. App'x 721, 723 (2d Cir. 2009) (affirming dismissal of state law unfair competition claim where no evidence of bad faith was presented); *Nat. Organics, Inc. v. Nutraceutical Corp.*, 271 F. App'x 89, 90 (2d Cir. 2008)

(same).

Further, plaintiff's common law unfair competition claim fails for the same reason that its Lanham Act claim fails: plaintiff has not established ownership of a distinctive, non-functional trade dress. *See Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, No. 14-CV-391 PKC, 2015 WL 3385683, at *9 (S.D.N.Y. May 26, 2015) (the common law unfair competition claim failed because plaintiff had not established a distinctive, non-functional trade dress); *Heptagon Creations, Ltd. v. Core Marketing LLC*, No. 11 Civ. 01794(LTS)(AJP), 2011 WL 6600267, at *9 (S.D.N.Y. Dec. 22, 2011) ("In New York, a common law unfair competition claim is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith."); *Eyal*, 784 F. Supp. 2d at 448 (requiring, for a common law trade dress infringement claim, that the plaintiff prove distinctiveness and non-functionality); *Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, No. 01 Civ. 904(DLC), 2002 WL 1492197, at *7 (S.D.N.Y. July 15, 2002) ("There being no trade dress that qualifies for protection and thus no trade dress in which the plaintiff has a proprietary right, the plaintiff cannot make out a claim for unfair competition based on the bad faith infringement of that trade dress.").

### C. New York Statutory Unfair Competition Claim

Plaintiff's New York State statutory unfair competition claim is preempted by federal trade dress law. A state law claim is preempted by federal law if it "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005) (quoting *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S. Ct. 1096 (1979)). The preemption analysis turns on the "allegedly tortious conduct" underlying the state law claim. *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 328 (E.D.N.Y. 2014) (quoting *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Ind. Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1360–61 (Fed. Cir. 1999) (en banc in part)). "To survive preemption, plaintiffs must plead conduct in violation of state law that is separate and independent from its [federal] claim." *Carson Optical*, 11 F. Supp. 3d at 328 (internal quotation marks and citation omitted); *see also Computer Assoc., Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992.

Here, plaintiff alleges unfair competition pursuant to New York General Business Law § 360-I, which provides that a "[l]ikelihood of . . . dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief . . .

notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." To establish a dilution claim under N.Y. Gen. Bus. Law § 360-I, a plaintiff must show "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *Eyal*, 784 F. Supp. 2d at 449 (citation omitted). In order to avoid preemption for a claim brought under N.Y. Gen. Bus. Law § 360-I, "that which is claimed to be unfair competition must be something different from copying, or the fruits of copying, or the intent or bad faith that can be inferred from the act of copying; if the harm arises from the simple fact of copying, the claim falls within [federal law] and is preempted." *Eyal*, 784 F. Supp. 2d at 447, 449; *see also Computer Assoc.*, 982 F.2d at 717 ("[U]nfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by [federal law].") (collecting cases); *Carson Optical*, 11 F. Supp. 3d at 336 n.10 (state law claims for unfair competition based solely on copying are preempted by federal law); *Buttner v. RD Palmer Enterprises, Inc.*, No. 5:13-CV-0342 LEK/ATB, 2013 WL 6196560, at *3 (N.D.N.Y. Nov. 27, 2013) (same).

Plaintiff alleges that pursuant to N.Y. Gen. Bus. Law § 360-I plaintiff has infringed on its distinctive trade dress because "defendant is advertising, selling and offering for sale

hand soap that exhibits a trade dress that is virtually identical to [plaintiff's trade dress], all of which is likely to cause confusion, mistake and to deceive the public." (Am. Compl., ECF No. 17 at ¶ 27.) Plaintiff essentially complains that defendant has copied its designs which will lead to confusion, mistake and deception of the public. Consequently, because plaintiff's statutory state law unfair competition claim is based solely on defendant's alleged copying of its design, it is preempted by federal law. *Eyal*, 784 F. Supp. 2d at 446, 449 (S.D.N.Y. 2011) (dismissing claim brought pursuant to N.Y. Gen. Bus. Law § 360-l because the basis for the claim was the copying of plaintiff's trade dress).

Even if plaintiff's statutory unfair competition state law claim was not preempted by federal law, plaintiff has not stated a plausible claim under N.Y. Gen. Bus. Law § 360-l. As discussed in greater detail above, plaintiff has not pled sufficient facts that would lead to an inference that the "In Your Element Soap" trade dress has acquired a secondary meaning or is otherwise protectable. *See Car-Freshner*, 2015 WL 3385683, at *9 (holding that plaintiff's N.Y. Gen. Bus. Law § 360-l claim failed because plaintiff failed to demonstrate ownership of a distinctive and non-functional mark); *Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, No. 01 CIV. 904 (DLC), 2002 WL 1492197, at *7 (S.D.N.Y. July 15, 2002) ("The plaintiff having failed to articulate a protectible

trade dress in the design of its frames and books, and thus having failed to demonstrate its ownership of a distinctive mark, its state law dilution claim must also fail."). Consequently, plaintiff's unfair competition claim pursuant to New York General Business Law § 360-I is dismissed for failure to state a claim on which relief may be granted.

## III.  Leave to Replead

Plaintiff seeks leave to replead any claims that are dismissed. Federal Rule of Civil Procedure 15(a) provides that leave to file an amended complaint should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962). However, the "futility of amendment" is a valid basis for denying leave to amend. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Williams v. Citigroup*, 659 F.3d 208, 214 (2d Cir. 2011) ("[L]eave to amend need not be granted where the proposed amendment would be futile.") (internal quotation marks and citations omitted); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (same). "Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies." *Garcia v. Paylock*, No. 13-CV-2868 (KAM), 2014 WL 298593, at *8 (E.D.N.Y. Jan. 28, 2014) (citations omitted); *see also Ariel (UK) Ltd. v. Reuters Grp.*, PLC, 277 Fed. Appx. 43, 45-46 (2d Cir. 2008).

Plaintiff's claims are deficient as a matter of law, and plaintiff has failed to show how the legal deficiencies can be cured, and has already had an opportunity to amend the complaint.[2] *See Goodrich v. Long Island R.R. Co.*, 654 F.3d 190, 200 (2d Cir. 2011) ("[W]ithout any showing that the deficiencies in the complaint could be cured, we must conclude that repleading would be futile."); *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (observing that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim") (collecting cases). Accordingly, plaintiff's request for leave to replead is denied.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss the Amended Complaint is **GRANTED**. The Amended Complaint is dismissed in its entirety, with prejudice. The Clerk of Court is

---

[2] Plaintiff sought to supplement its briefing, after oral argument on defendant's motion, with invoices showing that plaintiff's customers who bought "In Your Element Soaps" also purchased plaintiff's other novelty soap. Plaintiff intended for the invoices to support its argument that the market should be defined more broadly as the "Novelty" hand soap market, rather than the market for soaps reflecting the periodic table of elements. (ECF No. 26.) As stated above, "memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." *Goodman v. Port Authority of N.Y. and N.J.*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012). Thus, the court would not have considered the invoices in evaluating the sufficiency of plaintiff's pleading. Moreover, as discussed in greater detail herein, plaintiff's trade dress fails because it is aesthetically functional and because plaintiff has not adequately pled that its trade dress has acquired a secondary meaning, nor has plaintiff otherwise stated plausible unfair competition state law claims.

respectfully directed to enter judgment for defendant and close this case.

**SO ORDERED.**

Dated:      March 6, 2017
               Brooklyn, New York

                                        _____/s/_____
                                         Hon. Kiyo A. Matsumoto
                                         United States District Judge